**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

|  |  |  |
|---|---|---|
| **BARBARA BOLZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 5:20-CV-185-MAS** |
| **v.** | ) | |
| | ) | |
| **ANDREW SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION & ORDER**

Plaintiff Barbara Bolz ("Bolz") appeals the denial of the Commissioner's denial of disability insurance benefits and disabled widow's benefits (here, collectively "DIB") under Title II of the Social Security Act ("SSA").[1]  Before the Court are the parties' cross-motions for summary judgment.  [DE 19, 24].  For the reasons here discussed, the Court finds that the Administrative Law Judge ("ALJ") misapplied the governing Social Security regulations by failing to explain his weighing of the medical opinions and offer substantial evidence in the record supporting his analysis.  The Court grants Bolz's motion and reverses the Commissioner's non-

---

[1] The legal standard DIB claims mirrors that of Supplemental Security Income ("SSI"). *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. 1991) (table).  "The standard for disability under both the DIB and SSI programs is virtually identical."  *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010).  The Court generally references SSI and DIB case law interchangeably, mindful of the particular regulations pertinent to each type of claim.

disability finding, denies the Commissioner's competing dispositive motion, and remands this matter for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Bolz protectively filed an application for Title II DIB and disabled widow's benefits on June 8, 2016, alleging disability beginning March 30, 2016.  [Administrative Transcript ("Tr.") at 12, in the record at DE 17-1].  Bolz was 52 years old at that time.  [DE 19 at Page ID # 541].  Bolz attended school through the tenth grade.  [Tr. at 212].  She has prior work experience as a housekeeper and hand packer.  [Tr. at 56].  A very brief overview of her medical treatment is provided below and can be found in the record at DE 17.

Bolz claimed disability based on physical and mental limitations.  Specifically, she complained of asthma, hip pain, leg pain, headaches, and arthritis, as well as anxiety and depression.  There are a limited number of medical treatment records in the Administrative Transcript, but no treating sources offered opinions on Bolz's alleged limitations.

James Owen, M.D. conducted a consultative physical examination in March 2016.  [Tr. at 336-40].  Dr. Owen recorded that Bolz's strength, sensation, and coordination were normal; she could fully squat and perform heel and toe walking, got on and off the examination table without significant difficulty; and had normal gait and station.  [Tr. at 337]. Dr. Owen also noted that imaging of Bolz right hip interarticular space approximately 3mm slightly roughening superiorly and mild sclerotic changes.  [Tr. at 338]. He opined that Bolz would have "moderate-to-severe difficulty lifting, handling, or carrying objects."  [Tr. at 338].

Bolz saw Emily Skaggs, Psy.D., for a consultative examination in August 2016 (Tr. 329-34). Dr. Skaggs noted Bolz was unable to repeat serial threes backwards from 20; her mood was depressed; and she reported hearing her deceased husband's voice at times.  [Tr. at 331].  Dr. Skaggs diagnosed Bolz with major depressive disorder and a moderate anxiety disorder.  [Tr. at

2

332].  She opined that Bolz had a slight limitation in her ability to understand, remember, and carry out simple instructions; a marked limitation in her ability to tolerate stress and pressure in the workplace; a moderate limitation in her ability to sustain attention and concentration in the performance of simple, repetitive tasks; and a marked limitation in her ability to respond to supervisors and coworkers.

Three state agency physicians reviewed the records but did not examine Bolz.  In December 2016, state agency physician Diosdado Irlandez, M.D., reviewed the record and opined that Bolz had physical limitations consistent with a range of medium exertional work. [Tr. at 89-91].  State agency psychologist Ed Ross, Ph.D., reviewed the record in August 2016 and opined that Bolz could perform simple work procedures and instructions; perform routine work without special supervision and maintain concentration for two-hour periods while performing simple tasks; tolerate infrequent contact with coworkers and supervisors, and occasional contact with the public; and adapt to a work environment.  [Tr. 73-75].  In December 2016, state agency physician Christi Bruening, Ph.D., reviewed the record and rendered an opinion consistent with Dr. Ross's.  [Tr. 91-93].

ALJ Christopher C. Varo conducted an administrative hearing (at which Bolz was present) on January 4, 2019, and denied Bolz's claims on April 10, 2019.  [Tr. at 9 and 26].  In applying the five-step sequential evaluation, the ALJ found at Bolz has not performed substantial gainful activity since March 30, 2016, the alleged onset date. [Tr. at 15].  He found that Bolz has severe impairments including asthma, arthritis of the bilateral knees, depressive disorder and anxiety disorder, but the severe impairment(s), or combination of impairments, do not meet or medically equal a listing.  [Tr. at 15].  The ALJ further found Bolz can perform her past relevant work as a

hand packer; alternatively, she can perform other jobs existing in significant numbers in the national economy. [Tr. at 19-21].

On March 7, 2020, the Appeals Council denied Bolz's request for review of the ALJ's decision, finding there was no abuse of discretion, error of law, that the decision was supported by substantial evidence and not contrary to public policy.  [Tr. at 1].  Bolz subsequently filed this action on May 4, 2020 [DE 1], and the parties filed cross-motions for summary judgment in November 2020 and January 2021 [DE 19, 24].  This matter is now ripe for review and resolution.

## II.   **LEGAL FRAMEWORK**

Judicial review of the ALJ's decision is deferential and strictly limited.  The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").  Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286.  However, the Court need not comb the entire (lengthy) record in search for facts supporting under-developed arguments.  [*See* DE 16 (General Order No. 13-7) (citing

4

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")].  Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545.  Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result.  *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the proper five-step sequential analysis as conducted by an ALJ in determining disability status.  *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. §§ 416.920(a), 404.1520(a).  In the first step, the ALJ decides whether the claimant is performing substantial gainful activity.  20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i).  In the second step, the ALJ determines whether the claimant suffers from any severe impairments.  *Id.* at §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii).  In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments.  *Id.* at §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii).  In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work.  *Id.* at §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv).  Finally, in the fifth step, the burden shifts to the Commissioner.  The ALJ must consider and decide whether there are jobs that exist

in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience.  *Id.* at §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).  If the ALJ determines at any step that the claimant is not disabled, the analysis ends there.

### III.    ANALYSIS

On careful review of the full administrative record, the Court concludes that the ALJ did not appropriately explain his rationale for his RFC assessment.  The ALJ's analysis in this regard is insufficiently developed to permit meaningful review in contravention of the relevant regulatory standards and Social Security Rulings.  Thus, the Court cannot conclude on this record that substantial evidence ultimately supports the ALJ's weighing of the opinion evidence and his resulting RFC determination.  Further, the Court finds the ALJ may have committed an error of law, but the record is so lacking in detail that the Court cannot make that determination with any certainty.  The Court remands for reconsideration of both issues.

### A.    THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY DETERMINATION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

Bolz contends the ALJ erred in his assignment of weight to various opinions in the record, and in failing to mention some opinions at all.  It appears the state agency consultants' opinions, formed the basis for the ALJ's mental and physical RFC assessment, yet these opinions are never mentioned in the ALJ's decision.  No other opinions are afforded anything more than "partial weight."

The ALJ assigned "no weight" to the opinions of the consultative examiners, Dr. Skaggs and Dr. Owens, who personally examined Bolz.  [DE 19 at Page ID # 548 and Tr. at 18-19].  The ALJ found that Dr. Owens's "opinion that the claimant would have moderate-to-severe difficult lifting, handling, or carrying objects is not supported by his reported findings on examination, and he does nothing to explain why such difficulties would be reasonable. Additionally, it is also

6

inconsistent with, and not supported by, the other medical treatment records in the file." [Tr. at 18]. Similarly, the ALJ found Dr. Skaggs's psychological limitations were "totally unsupported by the examination findings and the other treatment records in the file." [Tr. at 19].

The ALJ assigned only "partial weight" to the written opinion provided by Bolz's daughter regarding her mother's limitations. Though Bolz's daughter "has a foundational basis from which to relate her observations regarding the claimant's functioning, the indications in the report as to the severity of the claimant's limitations are more restrictive than that supported by the evidence in the record." [Tr. at 19].

There were no treating source limitations in the record for the ALJ to address. The ALJ considered Bolz's statements on her disability application, her hearing testimony, and the medical records available to him. [Tr. at 17-19]. From the ALJ's RFC findings, it appears he adopted the opinions of the state agency reviewers Drs. Irlandez, Ross, and Bruening entirely or almost entirely. [Tr. 17; 89-91, 73-75, and 91-93]. The Commissioner agrees that "the ALJ's RFC for medium work involving simple, repetitive tasks and limited social interactions was consistent with the opinions of Dr. Irlandez, Dr. Ross, and Dr. Bruening[.]" [DE 24]. Oddly, however, the ALJ does not reference the opinions of Dr. Irlandez, Dr. Ross, and Dr. Bruening in his RFC determination.

The Commissioner attempts to frame this omission as "not explicitly weighing the opinions of the State agency experts," which the Commissioner argues is harmless error based on *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243 (6th Cir. 2015). In *Noto*, the Sixth Circuit Court of Appeals held that the ALJ did not err in failing to state the weight he gave to one of the treating physician's medical opinions but incorporated those limitations in his RFC. In contrast, the ALJ in this case

*does not even mention*—much less assign weight to—the state agency experts' opinions yet appears to adopt their opinions in his RFC determination.

The Court cannot conclude the ALJ's RFC is supported by substantial evidence where the ALJ does not discuss the three opinions on which it appears he based his RFC determination. The only explanation he provided for his RFC determination was as follows: "The reasonable limitations derived from the medical evidence of record and the claimant's testimony are accounted for in the residual functional capacity as explained above." [Tr. at 19]. This explanation makes little sense because there were no treating source limitation opinions, the ALJ gave no weight to the consultative examiners' opinions, he discounted Bolz's testimony as not substantiated by the objective evidence, and the medical treatment records were limited in scope. Thus, the Court is left wondering what evidence, exactly, the ALJ utilized to support his RFC decision. The Court recognizes that there is evidence in the record—perhaps even substantial evidence—that could support the ALJ's RFC decision. To makes this determination, however, would require the Court to conduct a *de novo* consideration of the medical opinions in the record. That is decidedly beyond the Court's inquiry on judicial review of the agency decision. The Court may not substitute its own independently reached judgment for that of the ALJ. Rather, the Court may decide only whether the ALJ's actual analysis—not another analysis the ALJ *could* or *may* have performed on the same record—is supported by substantial evidence. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (emphasizing that the Court cannot "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility").

Here, it appears—though the Court cannot be sure—that the ALJ most heavily weigh three non-examining state agency consultants' opinions without *any* explanation, as is required. Accordingly, the opinions cannot properly constitute substantial evidence supporting the ALJ's

RFC conclusion.  And, as these state agency opinions apparently served as at least the primary, if not the sole, determinant in the ALJ's RFC calculus, the Court ultimately cannot conclude that the RFC determination in this case is supported by substantial evidence as it currently stands.  The Court will reverse and remand to permit the ALJ to either to reweigh the full medical record and amend his RFC conclusion if appropriate, or to explain and justify his prior weight assignments underlying it more fully.

**B.**      **THE ALJ MAY HAVE COMMITTED A REVERSIBLE ERROR OF LAW**

Although the Court has already determined remand is necessary, the Court will address a related potential error of law so that it may also be corrected on remand.  The ALJ's citation to 20 C.F.R. § 404.1520c rather than 20 C.F.R. § 404.1527 further prevents the Court from conducting a meaningful review of the record.  [Tr. at 17 ("The undersigned has also considered the medical opinions(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.")].  Both parties agree that 20 C.F.R. § 404.1527 applies to Bolz's disability claim because her application was filed prior to March 27, 2017.  Section 404.1527 requires the ALJ to assign weight to the medical opinions in the record, while § 404.1520c specifically prohibits the ALJ from giving any specific evidentiary weight to any medical opinions or prior administrative findings.  The Commissioner argues that the ALJ made a "harmless scrivener's error" because "his decision clearly shows he weighed the medical opinions of record as required under 20 C.F.R. § 404.1527."  [DE 24 at Page ID # 570].  The ALJ's decision, however, clearly shows he weighed *some* of the medical opinions of record pursuant to 20 C.F.R. § 404.1527 but did not assign any weight to the other opinions.

Because of the deficits in the ALJ's decision discussed above, the Court cannot determine whether the ALJ made a harmless scrivener's error or applied an incorrect regulatory standard to some of the opinions in the record by failing to state what weight he assigned to them.  If the ALJ

9

applied the wrong standard to the state agency opinions, he committed an error of law and "the court must reverse and remand, 'even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859 (6th Cir. 2011). The Court must reverse and remand so that the ALJ may correct this error and apply the appropriate regulation to all of the opinions in the record.

## IV.    CONCLUSION

Remand is required to allow the ALJ to reconsider and reweigh the evidence in the record per the proper standards and/or explain the reasoning supporting his RFC conclusion. Because the Court finds remand proper on these grounds, it does not reach Bolz's additional arguments for remand.

For all of the reasons discussed, the Court **GRANTS** Bolz's motion for summary judgment [DE 19], **DENIES** the Commissioner's competing motion [DE 24], and **REVERSES** the Commissioner's non-disability finding. The Court **REMANDS** this matter for further proceedings as directed herein pursuant to Sentence Four of 42 U.S.C. § 405(g). A corresponding Judgment follows.

This the 27th day of September, 2021.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge